IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ROGER LOGAN                                                                                          PLAINTIFF

V.                              CASE NO. 3:14-cv-00147-JTK

CAROLYN W. COLVIN, *Acting Commissioner,*                               DEFENDANT
Social Security Administration

### MEMORANDUM AND ORDER

Plaintiff Roger Logan brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income ("SSI"). After reviewing the administrative record and the arguments of the parties, the Court finds that substantial evidence supports the Commissioner's decision.

### I.     PROCEDURAL HISTORY

Mr. Logan protectively filed his application for SSI on March 26, 2010, alleging a disability onset date of January 31, 2000. (R. at 23.) He alleged complications from pain throughout his whole body, fatigue/tiredness, sleeping a lot, and being a slow learner. (R. at 276.) The Social Security Administration denied Mr. Logan's claims at the initial and reconsideration levels. (R. at 23.) On February 21, 2012, an Administrative Law Judge ("ALJ") held a hearing on this matter. (R. at 82.) On August 29, 2012, the ALJ held a supplemental hearing on this matter because Mr. Logan introduced into the record additional medical records after the initial hearing. (R. at 65.) On September 21, 2012, the ALJ issued an unfavorable decision, denying Mr. Logan's claim. (R. at 20.) On April 8, 2014, the Appeals Council denied

his request for review. (R. at 1.)

On June 9, 2014, Mr. Logan filed a complaint against the Commissioner, appealing the ALJ's denial of SSI. (Pl.'s Compl. 1, ECF No. 3.) On July 8, 2014, the district judge reassigned the case to the Court based on the parties' consent. (Consent 1, ECF No. 6.) Both parties have submitted briefs for the Court to consider. (Pl.'s Br., ECF No. 13; Def.'s Br., ECF No. 14.)

## II.   ADMINISTRATIVE PROCEEDINGS

Mr. Logan was forty-six years old at the time of the administrative hearing and had received his high school diploma. (R. at 32, 91.) He had past relevant work as a harvest worker and in warehouse janitorial cleanup. (R. at 32.) The ALJ applied the five-step sequential evaluation process to Mr. Logan's claim.[1] (R. at 24.) The ALJ found that Mr. Logan satisfied the first step because he had not engaged in substantial gainful activity. (R. at 25.) At step two, the ALJ found that Mr. Logan suffered from the severe medical impairment of a chronic pain syndrome. (R. at 25.) At step three, the ALJ found that Mr. Logan did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26.) Before proceeding to step four, the ALJ found that Mr. Logan had a residual functional capacity ("RFC") to perform sedentary work. (R. at 26.)

---

[1]The five part test asks whether the claimant: (1) is currently employed; (2) severely impaired; (3) has an impairment or combination of impairments that meet or approximate a listed impairment; (4) can perform past relevant work; and if not, (5) can perform any other kind of work.  Through step four of this analysis, the claimant has the burden of showing that he is disabled.  Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008).

The ALJ limited Mr. Logan to work with "only occasional reaching, handling fingering and feeling." (R. at 26.) Mr. Logan would have to be able to "sit/stand at will." (R. at 26.) Mr. Logan would also be limited to "only occasional performance of the postural functions." (R. at 26.) The ALJ found at step four that Mr. Logan was not capable of performing his past relevant work. (R. at 31.) At step five, the ALJ determined that there were jobs available in significant numbers in the national and local economy that Mr. Logan could perform, such as a surveillance systems monitor or a phone clerk. (R. at 32.) Therefore, the ALJ found that Mr. Logan was not disabled. (R. at 33.)

### III.   STANDARD OF REVIEW

The Court's limited function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). The Commissioner's decision cannot be reversed merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). However, "[t]he substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Id.* (quoting *Smith v. Heckler*, 735 F.2d 312, 315 (8th Cir. 1984)). "In

reviewing the administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## IV.   DISCUSSION

Mr. Logan argues that the Commissioner's decision is not supported by substantial evidence. (Pl.'s Br. 8-9, ECF No. 13.) Specifically, Mr. Logan alleges that the ALJ's decision at step two, his RFC determination, and his decision at step five are not supported by substantial evidence. (*Id.* at 10.)

### A.   STEP TWO

Mr. Logan argues that substantial evidence does not support the ALJ's decision that his learning disorder was non-severe. (*Id.*). At step two, the ALJ must determine, "based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). Proof of a disabling impairment "must be supported by at least some objective medical evidence." *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992).

Substantial evidence supports the ALJ's step two determination. The only medical record that analyzed whether Mr. Logan had a learning disorder was in a mental diagnostic evaluation with Kenneth Jones, PhD. Dr. Jones stated that Mr. Logan denied any mental disorder or impairment, and assigned Mr. Logan a global assessment of functioning score between 65 and 75. (R. at 25.) Dr. Jones found that Mr. Logan had an "adequate capacity to

cope with the cognitive demands in a basic work situation." (R. at 25.) Mr. Logan's "ability to understand, remember and carry out instructions was not affected by the impairment; his ability to interact appropriately with supervisors, co-workers and the public, as well as respond to changes in the routine work setting, were not affected by the impairments; and . . . the claimant appeared able to work." (R. at 26 (citing Ex. 5F).) Plaintiff claims that circumstantial evidence supports his claim that his learning disorder is severe, but circumstantial evidence is insufficient for the ALJ to determine that a disorder is severe at step two. (Pl.'s Br. 11, ECF No. 13.) Plaintiff also argues that certain findings by Dr. Jones objectively support a learning disability, but those claims are not supported by the record. (*Id.* at 12; R. at 371-72.) Therefore, substantial evidence supports the ALJ's finding that Mr. Logan's learning disability is not severe.

B.   THE ALJ'S RFC DETERMINATION

Mr. Logan argues that substantial evidence does not support the ALJ's RFC determination for two reasons: (1) that the ALJ failed to consider Mr. Logan's learning disorder, and (2) the ALJ failed to consider the environmental restrictions placed on Mr. Logan by Joseph Patterson, M.D., and Bernard G. Crowell, M.D. (Pl.'s Br. 13, 15, ECF No. 13.)

It is the claimant's burden to prove his RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* Social Security Ruling 96-8p. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of claimant's ability to function in the workplace." *Moore*

5

*v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (internal citations omitted). Although an RFC is a medical determination, the ALJ must rely not only on medical evidence, but on all relevant, credible evidence. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

### 1.     *Learning Disorder*

Mr. Logan essentially argues that the ALJ committed legal error by failing to consider the effect of his non-severe learning disability in the RFC determination. (*Id.*). Mr. Logan bases his argument on Dr. Jones's finding that he had "marked limitations in his memory (word recall); calculations (inability to count backward from 20, perform serial 3's from 10, or perform multiplication and diversion; and judgment." (*Id.* (citing R. at 171-72.)).

The ALJ did not commit legal error in considering the effects of Mr. Logan's learning disorder in his RFC determination. Dr. Jones never found Mr. Logan to have "marked limitations" on any test results. Rather, his argument is based on Mr. Logan's counsel's attempt at interpreting the test results, which the Court does not consider as evidence. Based on the entire record, including Dr. Jones's findings, which the Court outlined in Section A of this Memorandum, the ALJ did not commit legal error when considering Dr. Jones's medical opinion.

### 2.     *Environmental Restrictions*

Mr. Logan contends that substantial evidence does not support the ALJ's decision to omit from the RFC determination the environmental restrictions placed on him by Drs. Patterson and Crowell. (Pl.'s Br. 15-17, ECF No. 13.) Dr. Patterson opined that Mr. Logan could have only occasional exposure to unprotected heights, moving mechanical parts,

6

operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, vibrations, and noise. (R. at 364.) He based this opinion on Mr. Logan's dizziness, shortness of breath, daily headaches, and tremors. (R. at 364.) Dr. Crowell opined that Mr. Logan should avoid concentrated exposure to heights, moving machinery, chemicals, noise, humidity, dust/fumes, temperature extremes, and vibrations. (R. at 379.)

Substantial evidence supports the ALJ's decision to discount both of the consultative examiners' opinions. The ALJ examined both opinions in making his RFC determination. (R. at 28-29.) The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (R. at 26.) The ALJ also considered "all the evidence presented related to the claimant's prior work history and the observations of non-medical third parties, as well as treating and examining physicians related to the above matters." (R. at 27 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).) Mr. Logan did not allege dizziness, shortness of breath, headaches, or tremors as disabling conditions in his application. (R. at 276.) He has not received any medical treatment for these conditions. "The opinion of a consulting physician who examines claimant once or not at all does not generally constitute substantial evidence." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (quoting *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). Since there is no other evidence of those conditions in the record, substantial evidence supports the ALJ's decision to omit the symptoms of those conditions from his RFC assessment.

    C.    STEP FIVE

Mr. Logan challenges the ALJ's step five determination based on the testimony of the vocational expert ("VE"). (Pl.'s Br. 14, ECF No. 13.) Specifically, the VE testified that Mr. Logan could "sit and stand" with the sedentary jobs he described. (R. at 72.) Based on that information, the ALJ found that there are "jobs that exist in significant numbers in the national economy that the claimant can perform," such as a surveillance systems monitor or phone clerk. (R. at 32.) Mr. Logan claims that the option to sit and stand is not in the Dictionary of Occupational Titles ("DOT"), which creates a conflict between the VE testimony and the DOT. (Pl.'s Br. 14-15, ECF No. 13.) The VE testified that her testimony was consistent with the DOT. (R. at 73.)

The ALJ must "'ask about any possible conflict' between VE evidence and 'information provided in the DOT.'" *Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014). Even if the VE testifies that her testimony is consistent with the DOT, the ALJ has the affirmative duty to "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than the DOT information." *Id.* at 989-990 (internal citations omitted).

Here, substantial evidence supports the ALJ's step five determination. The ALJ asked the VE if her testimony was consistent with the DOT, which satisfies the ALJ's burden to ask about any possible conflict. Mr. Logan's attorney asked the VE for her explanation of why she believed the jobs allowed the worker to sit and stand. (R. at 72.) The VE testified that these "are basic almost office-type jobs. And you can sit or stand and still perform the task. The call-out clerks or the phone clerks use headsets. It's not unusually for them to sit and stand. Same

8

thing with the surveillance system monitors. It's very common to sit and stand." (R. at 72). Assuming there was a conflict between the VE's testimony and the DOT, substantial evidence supports the ALJ's decision to accept the VE's explanation resolving the conflict as reasonable. (R. at 32-33.) Therefore, substantial evidence supports the ALJ's decision to rely on the VE's testimony in his step five determination.

## V.   CONCLUSION

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record that contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record and concludes there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error. Therefore, the final decision of the Commissioner is affirmed.

SO ORDERED this 21st day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE